Hinkle, J.
This matter is before this Court on plaintiff s motion for judgment on the pleadings. Plaintiff Ann Lingley (“plaintiff’) seeks reversal and remand of the decision rendered by the defendant, the Department of Environmental Protection (“DEP”).[1] The decision, issued by an Administrative Law Judge dismissed the plaintiffs appeal after concluding that the plaintiff lacked standing. In her appeal to this Court, the plaintiff contends that the ALJ exceeded DEP’s statutory authority or jurisdiction. She also *66 contends that he committed an error of law or made an unlawful use of procedure.
After hearing, consideration of the parties’ submissions, and for the reasons discussed below, the plaintiffs motion for judgment on the pleadings is DENIED, and the decision by the DEP’s Administrative Law Judge is AFFIRMED.

BACKGROUND

The administrative record reveals the following. In April 1998, the plaintiff applied to the DEP for a permit, filed under G.L.c. 91 and 310 C.M.R. §9.00 et seq.,. to construct and maintain a dock from the end of Wayland’s Robin Hood Road[2] to Wayland’s Dudley Pond. The plaintiff owns real estate located within the Woodland Park subdivision. Her property does not border Dudley Pond. In support of her DEP application, the plaintiff cited language from her deed, which grants to her and her husband “[t]he land with the buildings thereon . . . together with a right of way over the streets shown” on the recorded plan for the Woodland Park subdivision.[3]
On March 15, 1999, the DEP denied the plaintiffs application. The DEP determined that her proposed project would significantly interfere with a common landing in violation of 310 C.M.R. §9.35(2)(c) and navigability in violation of 310 C.M.R. §9.35(2)(a). The plaintiff appealed this decision later in April 1999 and requested an adjudicatory hearing under 310 C.M.R. §9.17 and G.L.c. 91A.
Several months later, in July 1999, Thomas A. Richter and Cheri R. Richter, owners of the one of the two lots adjacent to the end of Robin Hood Road and bordering Dudley Pond, moved to intervene or participate in the plaintiffs adjudicatory hearing. In August 1999, the ALJ held a prehearing conference and granted the Richters’ motion to intervene. The Richters subsequently filed a motion to dismiss alleging that the plaintiff lacked the requisite standing under 310 C.M.R. §9.11(2)(a) because she failed to assert a colorable claim to the right to cariy out the proposed work. They also filed a motion in limine to exclude from the hearing historic evidence related to the use of a previously existing dock in the same location. The plaintiff opposed both motions. The DEP filed an opposition to the motion in limine and a response that neither supported nor opposed the motion to dismiss.
The ALJ granted the Richters’ motion to dismiss on May 15, 2000 after concluding that the plaintiff failed to assert a colorable claim to carry out the proposed work and failed to establish her property rights to the land in question so as to be entitled to an adjudicatory hearing.[4] In drawing this conclusion, the ALJ considered the plaintiffs argument that language in her deed granted her the requisite legal authority to assert her claim and her contention that the DEP lacked authority to determine the extent of her easement rights. The ALJ also noted the plaintiffs admission that “her right of way is the same as that of the other 140 lot owners in Woodland Park.” Additionally, the ALJ considered the Richters’ contention that “to credit (the plaintiffs] assertion of standing is tantamount to saying that all 141 property owners in Woodland Park . . . have colorable claims to build docks on Dudley Pond.” Additionally, the ALJ acknowledged the plaintiffs assertion that her right to pass over the land provides her with the legal right to build a pier on that land even though 140 other property owners maintain an equal right of passage over the land. Ultimately, however, the ALJ denied plaintiffs request and concluded that “this bald and unsupported claim is not colorable.”
On June 14, 2000, the plaintiff appealed the ALJ decision to this Court.
DISCUSSION
In support of her motion, the plaintiff makes several arguments. First, the plaintiff argues that the ALJ’s Final Decision exceeded the agency’s statutory authority or jurisdiction. In the alternative, the plaintiff alleges that the ALJ’s decision was based upon an error of law or that the decision was made upon unlawful procedure. The plaintiff also requests that this Court set aside the ALJ’s decision and remand the matter to the agency for an adjudicatoiy hearing “on the sole issue of whether the proposed pier would interfere with the public rights of navigation as established in 310 C.M.R. §9.35(2)(A).” In opposition, the DEP maintains that the ALJ acted well within his authority. The DEP aloo contends that the ALJ’s decision did not constitute an error of law or an unlawful use of procedure.
This Court’s review of the DEP’s decision is defined by G.L.c. 30A, §14. See Howard Johnson Company v. Alcoholic Beverages Control Commission, 24 Mass.App.Ct. 487, 490 (1987). Under G.L.c. 30A, §14, this Court may affirm, remand, set aside, or modify an agency’s decisions if it is determined that a party’s substantial rights were prejudiced because the agency decision was, inter alia, “in excess of statutoiy authority or jurisdiction of the agency,” "based on an error of law,” or “made upon unlawful procedure.” G.L.c. 30A, Sec. 14(7)(b), (c), (d). A court’s review of an agency decision requires the court to afford due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by the enabling statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The court does not act as a de novo finder of fact, nor is the review a trial de novo on the record. Fergione v. Director of the Division of Employment Security, 396 Mass. 281, 283 (1985). A party appealing an administrative decision under G.L.c. 30A, §14 to the Superior Court has the burden of establishing invalidity on appeal. Merisme v. Board of Appeals on Motor Vehicle Liability Policies & Boards, 27 Mass.App.Ct. 470, 474 (1989). In this case, the plaintiff has not met her burden.
*67 The plaintiff has failed to establish that the ALJ exceeded his authority or jurisdiction when considering whether the plaintiff asserted a colorable claim of property rights. Similarly unavailing is the plaintiffs alternative contention that the ALJ’s decision was "based on an error of law” or “made upon unlawful procedure.” The decision fell well within the parameters of the DEP’s authority or jurisdiction. The Waterways Regulations, a comprehensive set of regulations pertaining to waterway licensing promulgated by the DEP,[5] requires the ALJ to evaluate the sufficiency of the plaintiffs legal authority to assert her claim. See Tindley v. Dep’t of Envt’l Quality Eng., 10 Mass.App.Ct. 623 (1980) (upholding finding by the DEQE [now the DEP] that the applicants in that case “asserted a colorable claim to the right to carry out the proposed work” as “sensible administration”); In the Matter of Daniel I. and Linda A. Coifman, No. 94-106, Final Decision (August 10, 1995) (recognizing that regulations “provide a gatekeeping function by ensuring that applicants who seek M.G.L.c. 91 licenses have some legitimate claim to build the proposed project”).[6] The regulations mandate an applicant for a license or permit to submit a written application, signed by the applicant and the landowner, if other than the applicant. 310 C.M.R. 9.11(2)(a). If the applicant cannot obtain the landowner’s signature, he or she “may provide other evidence of legal authority to submit an application for the project site.” See id.[7] Additionally, another regulation requires that an applicant who seeks an adjudicatory hearing on the DEP’s decision to grant or deny a license or permit request establish that she is “an applicant who has demonstrated property rights in the land in question . . .” 310 C.M.R. §9.17(1)(a).
Contrary to the plaintiffs assertion, the ALJ’s analysis centered not on the reasonableness of the proposed pier project, but on the sufficiency of plaintiff s claim within this regulatory framework. Abiding by the regulations, the ALJ reviewed the plaintiffs assertion that the requisite legal authority for her claim rested in her deed’s language, which grants to her and her husband ”[t]he land with the buildings thereon . . . together with a right of way over the streets shown” on the recorded plan for the Woodland Park subdivision. While the ALJ considered this assertion, he also recognized, and I agree, that “to credit [the plaintiffs] assertion of standing is tantamount to saying that all 141 property owners in Woodland Park . . . have colorable claims to build docks on Dudley Pond.”[8] This is not a rational or logical conclusion. As the ALJ recognized, the DEP need not “unquestioningly accept every assertion of a property right presented to it by an applicant.” This Court, as the reviewing court, defers to this assessment and to the DEP’s interpretation of its own regulations. See TBI, Inc. v. Board of Health of North Andover, 431 Mass. 9, 17 (2000), quoting Brookline v. Commissioner of the Dep’t of Envtl. Quality Eng’g, 398 Mass. 404, 414 (1986) (a court may not disturb agency’s interpretation of its regulation unless “interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious”).
The Appeals Court’s decision in Tindley v. Dep’t of Envt’l Quality Eng., 10 Mass.App.Ct. 623 (1980), does not preclude the ALJ from considering the sufficiency of the plaintiffs property claim. While the Tindley court recognized that the DEP must not “act as a judicial arbiter in a dispute over private property rights,’’[9] it did not restrict the DEP’s authority to evaluate materials submitted as part of an application for a Waterways license. The Tindley court affirmed the DEP’s finding that the applicant had “asserted a colorable claim to the right to carry out the proposed work,” but also recognized that the DEP’s issuance of the permit in no way granted to the applicant any property rights or authorized the invasion of another’s property rights. Id. Additionally, the Tindley court recognized that in approving the applicant’s claim as colorable, the agency had acted with “sensible administration.” Id. at 627.
Although the Tindley court upheld the DEP’s permit grant to an easement holder, that decision does not compel the conclusion here that the DEP erred when it denied plaintiffs request. The factual circumstances in Tindley differ significantly from the facts here. In Tindley, the Appeals Court affirmed the DEP’s decision to grant a request for a permit to construct a foot ramp and attached float to an applicant who had a right of way to the river. Id. at 623-27. Unlike this case, the language of the applicant’s easement specified that the right of way extended “to the Annisquam River over a parcel of land eight (8) feet in width.” Id. at 624. Here, the plaintiff s deed states only that she and her husband are entitled to “a right of way over the streets shown on said [Woodland Park] Plan.”
In the absence of language specifying that plaintiffs right of way extends “to Dudley Pond,” it cannot be inferred that plaintiffs easement encompasses rights related to water travel or related to the creation of a pier. See Bergh v. Hines, 44 Mass.App.Ct. 590, 592 (1998) (recognizing that “extent of an easement depends on the circumstances of its creation . . . When created by conveyance, the grant . . . must be construed with reference to all its terms and then existing conditions so far as they are illuminating”). A general right of way, such as plaintiffs, is limited to purposes of travel (absent special language creating broader rights). . ." Nantucket Conservation v. Russell Management, Inc., 2 Mass.App.Ct. 868 (1974). Such a general right of way does not incorporate the right to construct structures “in or upon the way.” Ward v. McGlory, 358 Mass. 322, 324 (1970) (omitting citation and internal quotations);[10] cf. St. Botolph Club, Inc. v. Brookline Trust Co., 292 Mass. 430, 433 (1935) (recognizing that as a general rule, doubts as to the extent of a restriction in an easement “should be resolved in favor of *68 freedom of land from servitude”). The ALJ’s decision is therefore consistent with Massachusetts law.
Plaintiffs reliance on Sullivan v. Donohoe, 287 Mass. 265, 267 (1934), is also misplaced. While Sullivan recognized that “when an easement or other property right is created, every right necessary for its enjoyment is included by implication," that language does not apply here in the manner that plaintiff suggests. Plaintiff contends that her right to erect the pier on Dudley Pond derives by implication because the pier is necessary for her enjoyment of the easement. Her easement, however, provides a right of travel over Robin Hood Road. Such a right does not extend to travel over Dudley Pond. Any right to construct a pier, therefore, does not necessarily arise by implication.
The plaintiff has failed to establish that the ALJ’s decision exceeded the agency’s statutory authority or jurisdiction or that it was based upon an error of law or made upon unlawful procedure. I therefore affirm the decision.

ORDER

For the foregoing reasons, plaintiffs motion for judgment on the pleadings is DENIED, and the decision of the Administrative Law Judge is AFFIRMED.

 Although listed in the caption, the Executive Office of Environmental Affairs is not a party to this lawsuit.

 Robin Hood Road is a private way within Wayland’s Woodland Park subdivision that terminates at Dudley Pond.

 The owners of the two lots adjacent to the end of Robin Hood Road and bordering Dudley Pond each own to the middle of the road. Neither owner signed the plaintiffs DEP application.

 During the pretrial conference, which ultimately spurred the subsequent motion to dismiss, the ALJ had questioned the parties about the Appeals Court’s decision in Tindley v. Dep't of Envt'l Quality Eng., 10 Mass.App.Ct. 623 (1980). Notably, the ALJ had also stated: ‘The (DEP) does not act as an arbiter in disputes over private property rights; it merely determines if an applicant, such as 1 the plaintiff] has asserted a colorable claim to the right to carry out the proposed work.”

 The DEP promulgated these regulations, see 310 C.M.R. §§9.00 et seq., under G.L.c. 91, §14, the enabling statute which granted the DEP authority to license and prescribe the terms for construction or extension of wharves, floats and piers.

 In a more recent administrative decision, In the Matter of Point of Pines Yacht Club, Inc., Docket No. 91-116, Final Decision (November 20, 1997), the DEP recognized the following: “It is one thing to say that the Department is not in the business of resolving waterways disputes; it is quite another to say that the Department is precluded from considering property questions at all in its licensing decisions.” Supra at 8. Additionally, the DEP noted that “it appears that the Department may, and indeed ought, to give consideration to property issues to the point of assuring itself that at least an applicant has a bona fide, even if disputed, claim to a right to perform the work proposed in the selected location.” Id. at 10 (emphasis added).

 On July 1, 2000, newly promulgated amendments moved these regulations to another location at 310 C.M.R. §9.1 l(3)(a).

 As noted by the ALJ, the plaintiff had also admitted that “her right of way is the same as that of the other 140 lot owners in Woodland Park.”

 See Tindley, supra at 627 (omitting internal quotation marks).

 Similarly, plaintiffs reliance on the DEP’s decision. In the Matter of Daniel I. And Linda A. Coifman, No. 94-106, Final Decision (August 10, 1995), is also misplaced. The easement in that case included the phrase “to and from Prince Cove.” See Sheftel v. Lebel, 44 Mass.App.Ct. 175, 176-77 (1998) (involving same easement as in Coifman and identifying easement language not specifically mentioned in Coifman).